IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

EDWIN JACOB KACZMAREK                                             PLAINTIFF

v.                              Civil No. 4:21-cv-04054

OFFICER ZANE BUTLER                                              DEFENDANT

## REPORT AND RECOMMENDATION

This is a civil rights action filed *pro* se by Plaintiff, Edwin Jacob Kaczmarek, under 42 U.S.C. § 1983.   Before the Court is a Motion for Summary Judgment filed by Defendant Officer Zane Butler, a/k/a Richard Zane Butler. (ECF No. 36).  Plaintiff has filed a Response (ECF No. 43), and Defendant has filed a Reply (ECF No. 44). Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Susan O. Hickey, Chief United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation.

## I. FACTUAL BACKROUND

Plaintiff is currently incarcerated in the Arkansas Department of Corrections, Randall L. Williams Correctional Facility.  His claims in this action arise from his arrest in Ashdown, Little River County, Arkansas prior to his incarceration.  At all times relevant to the instant lawsuit, Defendant was an officer with the Ashdown Police Department ("APD") and Plaintiff was an arrestee.  The facts in this matter are largely undisputed.  (ECF No. 43, p. 1).  Furthermore, the entirety of both challenged searches are depicted on the dashboard camera video from Defendant's patrol car.  (ECF No. 37-3).

On June 21, 2021, Defendant conducted a traffic stop on a red F-150 Ford pick-up truck ("Truck") in which Plaintiff was the front seat passenger.  (ECF No. 37-2, p.3).  Defendant approached the vehicle from the passenger side and spoke with the driver across Plaintiff who was

1

sitting in the passenger seat.  Plaintiff stared straight ahead while Defendant spoke with the driver.

Defendant believed Plaintiff to be nervous because he exhibited labored breathing and refused to

make eye contact with Defendant.  *Id*.  At this time, Defendant observed Plaintiff holding a Little

Caesar's pizza box in his lap.  *Id.*  Defendant asked the driver and Plaintiff for identification, but

Plaintiff advised Defendant he did not have any identification.  *Id.*  Plaintiff provided Defendant

his name and date of birth, and Defendant asked Plaintiff if he had any warrants or a suspended

license.  *Id.*  Plaintiff responded that he did not have either.  *Id.*

Defendant then returned to his patrol vehicle and ran both sets of information.  *Id.*

Defendant was notified Plaintiff had an active probation violation warrant in Miller County,

Arkansas, and Miller County advised they would extradite Plaintiff if he was picked up by

Defendant.  *Id.*  Defendant returned to the vehicle and explained to Plaintiff he had an active

warrant for his arrest from Miller County, and asked Plaintiff if this warrant was the reason for his

nervous behavior.  *Id.*  Plaintiff responded affirmatively, and Defendant informed Plaintiff he

would have to come with him.  (ECF No. 37-3).

 Defendant placed his handcuffs on one of Plaintiff's wrists while he remained in the

vehicle and then asked Plaintiff to step out of the Truck before cuffing both hands behind Plaintiff's

back.  *Id.*  Plaintiff stood to the side of the passenger door of the Truck facing away from the

highway with Defendant and the Truck between Plaintiff and the highway.  *Id.*  Defendant then

started a pat down of Plaintiff's person by checking his right pocket and shaking his pants.  *Id.*

Defendant then requested Plaintiff turn around and lien against the Truck where he continued his

pat down.  It is at this time Defendant noticed Plaintiff lien on the side of the Truck and clench his

"butt shut."  (ECF No. 37-2, p. 3).  Once Plaintiff was leaned against the Truck, Defendant started

his pat down on the outside of Plaintiffs pants at his right leg working his way first down to

2

Plaintiff's ankle and then back up quickly and over to Plaintiff's groin and buttocks area.  (ECF No. 37-3).  From the dashboard video vantage point, it does not appear Plaintiff flinched or showed any outward signs of discomfort as Defendant moved his pat down into Plaintiff's buttocks area. *Id.*  At this point, Defendant stated "hang on a sec, what you go in your butt?"  *Id.*  Defendant recorded in his Incident Report that he felt a "a hard item between [Plaintiff's] butt cheeks that was not normal, I felt the item and could tell that it had a 'crunchy' texture and believed the item I was feeling to be methamphetamine."  (ECF No. 37-2, p. 3).  After asking Plaintiff, what "the crunchy stuff in his butt" was, Defendant raised Plaintiff's shirt and felt his buttocks area again on the outside of Plaintiff's pants.  (ECF No. 37-3).  Plaintiff then asked Defendant not to hurt him and told him "I am going to give it to you."  *Id.*  Defendant then moved Plaintiff directly in front of his patrol car and the dashboard camera view, and Plaintiff reached into the back of his pants and removed a hand tied bag which appeared to contain approximately one ounce of methamphetamine (hereinafter "methamphetamine").  (ECF No. 37-2, p.3; ECF No. 37-3).

Defendant then asked Plaintiff if he possessed any more contraband and continued the pat down to ensure Plaintiff did not have any other contraband on his person.  (ECF No. 37-2, p. 3).  At this point, Plaintiff became upset and stopped cooperating with the pat down stating Defendant was grabbing his "dick" and putting his fingers up his "ass."  *Id.*  Plaintiff and Defendant also verbally argued over the necessity for this second pat down.  (ECF No. 37-3).  During this argument, Plaintiff alleged Defendant was unprofessional, and Plaintiff voiced he was uncomfortable with the way Defendant was touching him.  The following two exchanges took place:

Defendant stated: ". . . you weren't supposed to put meth up your ass either but you did."

Plaintiff responded: "It wasn't in my ass."

Defendant stated: ". . . I know it is uncomfortable, but I don't know what an ounce of dope stuck up my butt feels like either."

Plaintiff: "It wasn't up my butt man."

*Id.* Defendant then concluded the pat down and placed Plaintiff into the back seat of his patrol car. *Id.* Plaintiff did not suffer any physical pain or injury from either pat down. (ECF No. 37-1, pp.21-22, 25).

Defendant returned to the vehicle and spoke with the driver. The driver denied anything illegal was inside the vehicle and consented to a search of the vehicle (ECF No. 37-2, p. 3-4) Defendant searched the vehicle and found a SCCY 9 mm handgun inside the pizza box which Plaintiff was holding at the time of the traffic stop. The driver was then released. *Id.*

Plaintiff was transported to the Little River County Jail ("LRCJ") where he was booked on charges of possession with purpose to deliver methamphetamine more than 10 grams but less than 200 grams, possession of firearm by certain person, simultaneous possession of drugs and firearms, and illegal use of a communication device. *Id.* at 4. Plaintiff was strip searched once he was booked into the LRCJ, but he makes no complaint regarding this strip search. (ECF No. 37-1, p. 24). On October 22, 2021, Plaintiff pled guilty to (1) possession of a firearm by certain person; (2) possession of methamphetamines with purpose to deliver; and (3) illegal use of a communication device. (ECF No. 37-7). Plaintiff was sentenced to the Arkansas Department of Corrections based on this plea, and he is currently serving his sentence for this conviction. (ECF No. 37-8). These charges are the direct result of the arrest and search at issue here. Plaintiff does not assert his conviction has been overturned, nor does he challenge the validity of his arrest, plea, or conviction in anyway. (ECF No. 32).

The entire interaction between Defendant and Plaintiff is recorded on Defendants

dashboard camera video which Defendant submitted as Exhibit 3 to his Statement of Undisputed Facts. (ECF No. 37-3). While the Court has cited many facts gleaned from this video in the above factual background, the Court finds the following additional facts from the video notable to the claims at issue here:

1. The entirety of the first search from the time Defendant made the first contact until Plaintiff agreed to remove the contraband himself was less than 60 seconds;

2. The entirety of the second search was less than 60 seconds with much of that time consumed by Plaintiff's resistance and arguing between Defendant and Plaintiff;

3. Defendant never reached inside of Plaintiff's pants;

4. Defendant never looked inside of Plaintiff's pants;

5. Defendant never unbuttoned Plaintiff's pants;

6. Plaintiff's genitals and buttocks were never exposed in anyway;

7. The first pat down was conducted on the ditch side of the Truck with the Truck blocking Plaintiff from drivers on Highway 71;

8. Plaintiff did not jump, flinch significantly enough to be noticeable, audibly object, or react in anyway when Defendant initially patted down his buttocks area discovering the "crunchy" item;

9. When Plaintiff removed the contraband from his pants himself, he was in full view of drivers on Highway 71, but at no point during that removal was any of Plaintiff's buttocks or genitals exposed, the removal appeared very easily accomplished and took approximately seven (7) seconds;

10. Defendant stood in between Plaintiff and Highway 71 during the majority of the second pat down and specifically while shaking out Plaintiff's pants by the belt;

11. While it is obvious that Plaintiff's groin and buttocks area were patted and his pants were grabbed and shaken by Defendant in the groin area, it is impossible to determine from simply watching the dashboard video, that Plaintiff's genitals and buttocks area were grabbed; and

12. It was daylight during both searches.

(ECF No. 37-3).

Plaintiff disputes only the assertion that the bag containing the methamphetamine was not inside his body. He asserts the bag was located inside of his "anus" and the bag was not simply under his clothing in a way that it could be felt by a simple pat down. (ECF No. 43. P. 2). Plaintiff states the drugs were located "inside of my body . . . inside of my anus to be exact." *Id.*

## II. PROCEDURAL BACKGROUND

Plaintiff filed his Complaint on August 18, 2021. (ECF No. 1). Defendant answered on October 26, 2021. (ECF No. 14). Plaintiff was granted leave to file an Amended Complaint on January 26, 2022. (ECF No. 22). Plaintiff filed his Amended Complaint on the same day. (ECF No. 23).

In his Amended Complaint, Plaintiff asserted the following claims against Defendant: "4th Amendment; sexual misconduct; sexual assault; and illegal search." (ECF No. 32, p. 4). Plaintiff specifically alleges:

During a traffic stop on Highway 71 in [p]ublic Officer Richard Zane Butler pulled me out of the vehicle and conducted a pat down search and he im[m]ediately started grabbing my genetial (sic) areas multiple times[.] [H]e then searched in between my [b]utt checks with his fingers with enough force . . . that he fealt (sic) something that was Keestered in my butt[.] [A]fter he felt something in my butt I asked him to please not hurt me because I was afraid[.] [H]e then asked me what was the crunchy stuff in my butt that he felt[.] I told him that I would get it for him after he tried grabbing it[.] I was afraid he would rip the bag inside of me[.] [S]o he pulled me to the hood of his car where I then removed the item for him[.] [H]e then asked me if that was it[.] I told him yes[.] He then took his left hand and held my penis and testicles while he took his right

6

hand to dig in between my butt cheeks violating me trying to find drughs (sic) all while in public instead of taking me to the police station and strip searching me like he was suppose[ed] to do.

*Id*. at 4-5.

Plaintiff asserts only individual capacity claims against Defendant.  *Id.* at 5.  Plaintiff claims he suffered damages in the form of "mental pain and suffering" from being violated and stripped of his dignity in public, and he seeks compensatory and punitive damages in the amount of $250,000.00.  *Id.*  There are no allegations of physical injury to Plaintiff in the Amended Complaint.  *Id.*

On May 31, 2022, Defendant filed his Motion for Summary Judgment (ECF No. 36), Statement of Undisputed Facts (ECF No. 37), and Memorandum Brief in support of his Motion for Summary Judgment (ECF No. 38).  Defendant argues as an initial matter, Plaintiff's claims are barred because a determination that the search was invalid would undermine the validity of Plaintiff's criminal conviction.  (ECF No. 38, p. 9).  Second, Defendant argues he is entitled to qualified immunity because the search was a lawful search incident to arrest.  *Id.* at 11.  Finally, Defendant argues Plaintiff cannot prove an unreasonable, excessive, or unconstitutional search when it is undisputed Plaintiff possessed methamphetamines hidden on his person and the entire search is demonstrated on the dashboard camera video.  *Id.* at 13.

On July 18, 2022, Plaintiff filed a verified Response in opposition to Defendant's Motion for Summary Judgment.  (ECF No. 43).  In his Response, Plaintiff states "I don't necissarily (sic) dispute any of the facts, but the fact I would like to focus on is that there was approximately one ounce of meth that was located inside of my anus (SUMF 21)."  (ECF No. 43, p. 1).  Plaintiff also states he disputes "SUMF 15 – 18" all of which also relate to the exact location of the methamphetamines on Plaintiff's person.  *Id.*  Plaintiff asserts that the amount of pressure

necessary to feel something located inside of his anus was beyond a "simple pat down."  *Id.* at 3. According to Plaintiff, the methamphetamine was not underneath his clothing, but instead located inside his body.  Specifically, it was located inside his anus.  *Id.* at 2.  Plaintiff relies upon Defendant's Police Incident Report to support his assertion that Defendant searched "inbetween my buttcheeks."  *Id.*  Also, Plaintiff relies on the dashboard video, where Defendant asked multiple times what was "inside my buttcheeks."  *Id.*  Plaintiff argues that Defendant's search went beyond a pat down search and violated his constitutional rights.  *Id.* at 3.  The entirety of Plaintiff's Response relates to facts of his first pat down and the discovery of the methamphetamine.[1]

On July 25, 2022, Defendant filed a Reply.  (ECF No. 44).  In his Reply, Defendant argues that Plaintiff has failed to identify a material issue of disputed fact.  *Id.* at 1.  Further, Defendant argued Plaintiff failed to properly respond to his Statement of Undisputed Facts because he did not file a separate statement of disputed facts listing each numbered statement of fact which he disputes.  *Id.* at 2.  Finally, Defendant reasserts his argument the Court should not consider Plaintiff's conclusory statements that are clearly contrary to the evidence on the record, specifically the dashboard video.  *Id.* at 3.

### III. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, the record "shows that there is no genuine

---

[1] Plaintiff also argues, for the first time in his Response, Defendant violated APD policy by extending his search beyond Plaintiff's pockets or items in his possession.  The Court will not consider a new claim raised for the first time in a Response to Motion for Summary Judgment.  The appropriate time to make new and additional claims is through an Amended Complaint pursuant to the Initial Scheduling Order.  Such a time has passed.  (ECF No. 15). However, even if the Court considered the claim, it would recommend dismissal as a matter of law. State actor's failure to follow the policy and procedure of the department where he works is not an independent cause of action under Section 1983.  S*ee Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) ("There is no federal constitutional liberty interest in having state officers follow state law or prison officials follow prison regulations.").

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).  "Once

a party moving for summary judgment has made a sufficient showing, the burden rests with the

non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine

issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co*., 165 F.3d 602, 607 (8th Cir.

1999).

The non-moving party "must do more than simply show that there is some metaphysical

doubt as to the material facts." *Matsushita*, 475 U.S. at 586.  "They must show there is sufficient

evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607.  "A case founded

on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. at 610.

"When opposing parties tell two different stories, one of which is blatantly contradicted by the

record, so that no reasonable jury could believe it, a court should not adopt that version of the facts

for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380

(2007).

## IV.  DISCUSSION

The Court interprets Plaintiff's claims as one that Defendant violated his Fourth

Amendment rights with an illegal search; and this violation amounted to sexual assault.  The Court

interprets the sexual assault claim as a further challenge to the reasonableness or scope and manner

of the searches which are the basis of Plaintiff's complaint.[2]  Further, the Defendant asserts there

are two separate pat downs which Plaintiff complains, and the Court agrees: (1) the initial pat down

---

[2] If Plaintiff is attempting to make a criminal charge of sexual assault against Defendant, he must do so through the State of Arkansas as this court has no jurisdiction over such a claim.

beside the Truck which produced the methamphetamine; and (2) the follow-up pat down in front of Defendant's patrol car after Plaintiff removed the methamphetamine.

As an initial matter, the Court notes Defendant's argument Plaintiff failed to adequately respond to his Statement of Undisputed Facts.  While the Court acknowledges Plaintiff did not submit a separate filing disputing Defendant's Statement of Undisputed Facts as required, he did list, by Defendant's assigned number, the facts which he disputes in his Response.   Given Plaintiff's *pro se* status and the adequate comprehensibility of Plaintiff's Response and factual disputes, the Court will accept this format.

### A.  *Heck* analysis

Another initial matter is Defendant's argument Plaintiff's claims are barred by *Heck v. Humphrey,* 512 U.S. 477 (1994).  In *Heck*, the Supreme Court held a claim for damages for "allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid" is not cognizable until "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of *habeas corpus.*"  *Heck*, 512 U.S. 486-487.  The Court noted if a successful claim would not demonstrate the invalidity of an outstanding criminal judgment, it should be allowed to proceed.  *Id.*  The *Heck* bar has been applied to claims for injunctive or declaratory relief and damages.  *See Smith v. Norris*, 40 F.App'x 305 (8th Cir. 2002) (unpublished); *Rosendahl v. Norman*, 242 F.3d 376 (8th Cir. 2000).

However, *Heck* is not a complete bar to claims such as illegal search and seizures even when the evidence was obtained in the challenged search or seizure.  In footnote seven, the Supreme Court in *Heck* explained that a damages action for an illegal search does not necessarily

10

imply the invalidity of a conviction due to doctrines such as independent source, inevitable discovery, and harmless error.  *Heck*, 512 U.S at 487, n. 7.  "In order to recover compensatory damages, however, the [Section] 1983 plaintiff must prove not only that the search was unlawful, but that it caused him actual, compensable injury, which, we hold today, does *not* encompass the "injury" of being convicted and imprisoned (until his conviction has been overturned)."  *Id.* (emphasis in original).  The Eighth Circuit has interpreted this footnote to create a general exception from *Heck* for Fourth Amendment search and seizure claims.  *See e.g.*, *Cooney v. Arkansas*, No. 21-3824, 2022 WL 288143 (8th Cir. Feb. 1, 2022) (holding plaintiff's Section 1983 illegal search claim was not *Heck*-barred because his lack of probable cause argument did not necessarily call into question the validity of his state court conviction) (unpublished); *Moore v. Inman*, 210 Fed. Appx. 550 (8th Cir. 2006) (holding plaintiff's Section 1983 claim for illegal search of his vehicle was not categorically barred by *Heck* because of doctrines such as independent source, inevitable discovery, and harmless error); *Collins v. Bruns*, 195 Fed.Appx. 553 (8th Cir. 2006) (finding the district court erred in holding the plaintiff's defective-search-warrant claim was categorically barred by *Heck*); *Whitmore v. Harrington*, 204 F.3d 784, 785 (8th Cir. 2000) (holding the district court erred in dismissing the plaintiff's unlawful-investigative-stop claim as barred by *Heck* because "a suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the [Section] 1983 plaintiff's still-outstanding conviction.") (internal citations omitted).  *See also, Simmons v. O'Brien*, 77 F.3d 1093, 1095 (8th Cir. 1996) (acknowledging the general exception to Section 1983 claims based on Fourth Amendment search and seizure violations enumerated in footnote seven of *Heck,* and extending it to Section 1983 claims based on Fifth Amendment coerced confession claims).

11

While Plaintiff challenges the first search that produced the bag of methamphetamine which Plaintiff is currently serving a prison sentence, Plaintiff does not challenge his arrest or conviction of the possession of this methamphetamine.   Further, Plaintiff does not allege Defendant did not have the legal right to search or pat him down incident to his arrest.   Instead, Plaintiff argues the manner and scope of the search violated his dignity and right to privacy and should not have been conducted on the side of the highway.   He argues Defendant should have waited to do a strip search at the jail once he was booked.   Plaintiff seeks monetary relief in the amount of $250,000.00 for his mental pain and suffering, for being stripped of his dignity in public, and what he classifies as a sexual assault.   (ECF No. 23, p. 9).   Plaintiff makes no claim that the search was unlawful in a manner that could have led to his conviction being overturned.

Plaintiff's claim fits into the general exception of *Heck* for search and seizure claims. Additionally, Plaintiff has made a claim for damages beyond his conviction when he claimed mental pain and suffering from being stripped of his dignity in public. *See Memphis Community School District v. Stachura*, 477 U.S. 299, 306-307 (1986) ("Compensatory damages may include not only out-of-pocket loss and other monetary harms, but also such injuries as impairment of reputation . . ., personal humiliation, and mental anguish and suffering.") (internal quotations and citation omitted).

### B.  Qualified immunity

Defendant argues, if Plaintiff's claims are not barred by *Heck*, then Defendant is entitled to qualified immunity.   Qualified immunity "shields [a] government official from liability in a section 1983 action unless the official's conduct violates a clearly established right of which a reasonable person would have known."   *Brown v. City of Golden Valley*, 574 F.3d 491, 495 (8th Cir. 2009).   Qualified immunity protects "all but the plainly incompetent or those who knowingly

violate the law." *Malley v. Briggs,* 475 U.S. 335, 341 (1986).  "At summary judgment, qualified immunity shields a law enforcement officer from liability in a § 1983 action unless: (1) the facts viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation." *Watson v. Boyd,* 2 F.4th 1106, 1109 (8th Cir. 2021) (internal citation and quotations omitted).

In his Complaint, Plaintiff is not challenging or claiming his arrest was improper, nor does he claim Defendant did not have the legal right to search him in either the first or second instances. It is undisputed, Plaintiff was lawfully arrested, thus a search of Plaintiff's person incident to his arrest was appropriate and lawful.  *See U.S. v. Pratt,* 355 F.3d 1119, 1121, 1124 (8th 2004) (explaining if an officer arrests an individual, he may search individual's person incident to that arrest and such a search is justified by the concern for the officer's safety and need to collect evidence even without actual suspicion of weapons or contraband on the individual's person).  The issue Plaintiff raises is the reasonableness of the scope and manner of Defendant's search. Specifically, Plaintiff complains of the location on the side of State Highway 71, and the manner in which Defendant searched Plaintiff amounting to what Plaintiff alleges was a sexual assault.

The Fourth Amendment prohibits unreasonable searches, and the test for such reasonableness of a search "requires a balancing of the need for the particular search against the invasion of personal rights that the search entail." *Bell v. Wolfish,* 441 U.S. 520, 559 (1979).  A search incident to arrest is intended to protect arresting officers and safeguard evidence that an arrestee might conceal or discard.  *Arizona v. Gant*, 556 U.S. 332, 339 (2009).  The Eighth Circuit has provided clear direction in determining reasonableness in searches like the one at issue here. In *U.S. v. Williams*, the Eighth Circuit explained there is not "a bright-line rule that when a detainee has been secured, and travel to a station house is possible, an on-street intimate inspection is an

unconstitutional, unreasonable search."  477 F.3d 974, 975, 977 (8th Cir. 2007) (internal citations and quotations omitted).  The *Williams* Court explained, courts must consider "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted."  *Id.* at 975 (quoting *Bell*, 441 U.S. at 559).  The Eighth Circuit went on to emphasize that officers should "take precautions to ensure that a detainee's privacy is protected from exposure to others unconnected to the search."  *Id.* at 977 (internal quotations and citations omitted).  Considering these elements, the *Williams* Court recognized an officer's reach-in search of a clothed suspect's genital area which did not display his genitals to the public, even though the search was conducted in the police precinct parking lot, was reasonable since the officer took steps to diminish the potential invasion of the detainee's privacy.  *Id.* at 977.

As Defendant points out, Plaintiff is complaining of two separate pat down incidents.  The first being the initial pat down conducted on the side of the Truck immediately after Plaintiff stepped out of the Truck, and the second being the pat down in front of Defendant's patrol car after Plaintiff removed the methamphetamine from his pants.  Plaintiff argues Defendant went beyond a pat down when he used so much pressure, he was able to feel the contraband located inside of his anus.  Plaintiff contends he should have been taken to the jail for a strip search instead of subjected to the pat down search on the side of the highway.  Plaintiff also alleges, after he removed the methamphetamine, Defendant "then took his left hand and held my penis and testicles while he took his right hand to dig in between my butt cheeks violating me trying to find drugs (sic) all while in public."  (ECF No 23, p. 5).  It seems this second search is the portion of the search Plaintiff believes amounted to a sexual assault.

Here it is undisputed that Defendant lawfully arrested Plaintiff and both searches were lawful searches incident to his arrest.  Also, it is undisputed both searches were conducted on the

14

side of State Highway 71 in Ashdown, Arkansas—the first on the ditch side of the Truck and the second in front of the Defendant's patrol car with Defendant standing between Plaintiff and the highway for the majority of the search.  It is also undisputed that both searches were pat downs completely outside of Plaintiff's clothing.  The dashboard video shows, and the parties do not dispute, Defendant never reached inside of Plaintiff's pants, never conducted a visual inspection inside Plaintiff's pants, nor did he unbutton or pull Plaintiff's pants down or expose his genitals or buttocks in anyway.  Finally, it is undisputed Plaintiff suffered no physical injuries from either of Defendant's searches.

The only disputed fact is exactly where the methamphetamine was located on Plaintiff's person.  Defendant admitted he felt a crunchy item in between Plaintiff's "butt cheeks." (ECF No. 37-2, p.3).  In his Amended Complaint, Plaintiff claimed the methamphetamines were "keestered in my butt." (ECF No. 23, p. 5).  In his Response, Plaintiff also claims Defendant felt "in between my [b]utt cheeks with enough pressure to feel something inside of my [a]nus." (ECF No. 43, p.3).  Plaintiff also argues in support of his version of this fact, that Defendant "asked me what was inside my [b]utt" on the dashboard video.  *Id.* at 2.  However, also on the dashboard video Plaintiff twice states the methamphetamine was not inside his body.  (ECF No. 37-3).

On summary judgment, the Court is not required to adopt a version of the facts that is clearly contradicted by the record.  *Scott,* 550 U.S. at 380.  Plaintiff himself stated in the dashboard video, in two separate statements, that the contraband was not inside his body.  (ECF No. 37-3).  Further, the video evidence shows a standard and quick over the clothes pat down in which Defendant felt the contraband under Plaintiff's pants.  During this portion of the search, Plaintiff showed no signs or symptoms of an excessive amount of pressure being exerted by Defendant.  Specifically, Plaintiff did not jump, flinch, audibly protest, or otherwise indicate he was

experiencing discomfort or pain. *Id.* Additionally, Plaintiff admits he suffered no physical pain or injury from the pat down. (ECF No. 37-1, pp. 21-22, 25). Furthermore, it is clear from the dashboard video that Plaintiff simply reached into the back of his pants and easily removed the methamphetamine. (ECF No. 37-3). From the record before the Court, no reasonable jury could believe the methamphetamine was inside of Plaintiff's body during the first search. However, as the Court is considering whether Defendant is entitled to qualified immunity, the Court will view the facts in a light most favorable to Plaintiff and proceed under the assumption the methamphetamine was located inside of Plaintiff's anus.[3] *See Watson,* 2 F.4th at 1109.

Applying the analysis enumerated in *Williams* to the facts here, regardless of whether the methamphetamine was inside Plaintiff's anus or merely "in between his butt cheeks," the Court finds Defendant had no reason to believe his actions violated Plaintiff's firmly established constitutional rights. The scope of the intrusion into Plaintiff's privacy, while likely uncomfortable was reasonable. The manner in which the pat down was conducted was brief, not excessively forceful, and it was relatively discrete to drivers on the public highway where the stop took place. Both pat downs were performed over Plaintiff's clothes, rather than inside the clothing. Plaintiff's genitals nor buttocks were ever exposed, and for the majority of both pat downs Plaintiff was shielded from the highway by either the Truck or Defendant's body. Plaintiff also suffered no physical injury or physical pain from either pat down. Defendant's justification for the first search was reasonable as it was a lawful pat down incident to arrest. *See Arizona v. Gant*, 556 U.S. 332, 339 (2009). The second pat down search is also clearly reasonable as it was a completion of the

---

[3] The Court notes, Plaintiff never makes any allegation that Defendant performed a cavity search, or that Defendant penetrated his anus in anyway. Plaintiff's argument is the pressure applied during the pat down allowed Defendant to feel the contraband inside his body. (ECF Nos. 32, 43).

first pat down incident to Plaintiff's arrest, and it immediately followed Plaintiff's production of contraband concealed on his person.[4]  Finally, since Plaintiff's genitals nor buttocks were ever exposed, his pants never unbuttoned, and no reach in search conducted there was no need for precautions to protect his privacy in either search.  Defendant conducted the pat downs quickly and, as is clear from the dashboard video, Defendant did not grab Plaintiff's penis or insert his finger(s) into Plaintiff's anus.  Rather, Defendant can be seen clearly grasping Plaintiff's pants and shaking them.  Accordingly, persons unconnected with the search could not have observed such actions.

The Court finds, considering the facts in a light most favorable to Plaintiff and the binding legal precedent at the time the searches occurred, Defendant is entitled to qualified immunity.  It was reasonable for Defendant to believe his actions did not violate Plaintiff's clearly established constitutional rights.  *See e.g., Williams*, 477 F.3d 974, 975, 976 (8th Cir. 2007) (holding contact with a suspect's genitals is not *per se* unreasonable and dismissing the plaintiff's argument that he should have been stripped and visually searched rather than officer's reaching inside of his underwear in the precinct parking lot to retrieve crack cocaine hidden in suspects genital area).  Additionally, district courts have applied this precedent in similar situations.  *See e.g., Fugate v. Moberly Police Dep't,* No. 2:21-CV-62-RLW, 2022 WL 1404231 (E.D.Mo. May 4, 2022) (holding an officer grabbing the plaintiff's penis was reasonable because "some physical contact is permissible, and even unavoidable, when police are conducting a search incident to an arrest to ensure the arrestee is not concealing a weapon or contraband") aff'd No. 22-2290, 2022 WL 17668333 (8th Cir. Sept. 8, 2022); *Peroceski v. Tarr,* No. CIV.08-333(JRT/JJK), 2009 WL

---

[4] The Court notes Plaintiff did not challenge the premise that both pat downs were incident to his lawful arrest.

3202463 (D. Minn Sept. 30, 2009) (An officer's seizure of contraband inside the arrestee's vehicle along with tips of previous drug sales justified officer's action of unbuttoning arrestee's pants, pulling out arrestee's waistband and looking into arrestee's groin area for approximately thirty seconds in a gas station parking lot).  Furthermore, persuasive legal precedent supports a finding of qualified immunity.  *See e.g., U.S.* v. *Williams,* 209 F.3d 940, 942, 944 (7th Cir 2000) (Court found search and seizure reasonable when an officer felt a hard object "between the cheeks of [arrestee's] buttocks during a routine pat down, and after arrestee attempted to flee and was subdued, the officer reached inside his undershorts and retrieved crack cocaine).  Accordingly, the Court recommends Defendant be granted qualified immunity.

## V. CONCLUSION

For the reasons stated above, I recommend Defendant Richard Zane Butler's Motion for Summary Judgment (ECF No. 36) be **GRANTED** and the claims against him be **DISMISSED WITH PREJUDICE**.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED this 11th day of January 2023.**

/s/ *Barry A. Bryant*
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE